**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MOUNIR A. KUBLAWI, ) | |
| ) | |
| Petitioner, ) | 3:11-CV-0789-RCJ-VPC |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| JACK PALMER, *et al.*, ) | |
| ) | |
| Respondents. ) | |

In this habeas corpus action, on October 15, 2012, respondents filed a motion to dismiss the amended petition (ECF No. 22). Petitioner, through counsel, has opposed the motion (ECF No. 27) and respondents have replied (ECF No. 35). The arguments are reviewed herein and the motion to dismiss is granted.

**I.   Procedural Background**

Between February 28, 2006 and May 8, 2006, petitioner faced ever-increasing charges alleging burglary, forgery, theft, attempted theft, fraudulent use of a debit or credit card, possession of a credit card without the owner's consent and possession of a forged instrument. *See* exhibits 2-9.[1] Petitioner and the prosecution negotiated a plea agreement wherein petitioner agreed to plead guilty to one felony count of forgery (Count IV of the Amended Information, ex. 9) and one felony

---

[1] The exhibits referenced in this order were submitted by petitioner in support of his amended petition and are found in the Court's record at ECF Nos. 12-15 and 28.

count of possession of a debit or credit card without the owner's consent (Count 17 of the Amended Information) wih the remaining counts to be dismissed. Ex. 17. Petitioner agreed to concurrent sentences of eight to twenty years in prison and to adjudication a habitual criminal. *Id.* Sentencing occurred on November 29, 2006. Ex. 19. The judgment of conviction was entered on December 7, 2006. Ex. 21.

Petitioner filed an untimely notice of appeal on December 4, 2007. Ex. 44. The Nevada Supreme Court gave petitioner an opportunity to show cause why the appeal was late (ex. 45), and when he was unable to show that he had submitted the notice to prison officials within the thirty-day appeal time, the court dismissed the appeal on March 27, 2008, as lacking jurisdiction. Ex. 62.

Meanwhile, in March of 2007, petitioner sought replacement counsel to assist with his appeal (exs. 22 and 23) claiming his trial counsel had failed or refused to ensure proper medical examination and treatment for a head injury suffered a week before his arrest and the continuing head pain and memory loss suffered during the course of his criminal proceedings. The state opposed the motion, arguing petitioner was not entitled to any counsel where the time to appeal had expired (ex. 24). The state court entered an order granting the motion on April 2, 2007 (ex. 25).

On April 11, 2007, petitioner moved for copies of the transcripts of his criminal proceedings, (ex 26), which the state also opposed (ex. 27). On May 3, 2007, a hearing on the motion was conducted (ex. 28) wherein petitioner's trial counsel advised the court that petitioner sought the transcripts in order to ascertain what record was made of his medical condition and memory loss in anticipation of a motion to withdraw guilty plea. *Id.* The court noted its intent to grant the request for transcripts, so long as petitioner could provide a reason for his request as well as the specific proceedings that he wanted transcribed. *Id.* at 5.

Thereafter, between May 22, 2007 and June 15, 2007, petitioner filed motions seeking clarification of the court's order and a name and contact information for the attorney appointed pursuant to Judge Bell's order of April 2, 2007. Exs. 29 and 30. On June 28, 2007, another hearing

was conducted (ex. 31) by state district judge Bixler.  At that hearing, the order appointing counsel was discussed by the court with skepticism, as the minutes of the court proceedings did not identify when Judge Bell may have entered his order.  The court sought clarification and resubmission of petitioner's motion, *id.,* which petitioner attempted to provide (ex. 32).

At a further hearing on July 10, 2007 (ex. 33), the order appointing counsel was set aside. *Id*. at 6.  The court once again ordered that petitioner provide clarification of the issues he wishes to explore and the reasons for his transcript request. *Id.* The court ordered a copy of the latest court minutes provided to petitioner. *Id.*  Thereafter, on July 23, 2007, petitioner filed an application to proceed in *forma pauperis* and a motion for appointment of counsel.  Exs. 35 and 36. The next day, on July 24, 2007, petitioner filed a state post-conviction petition.  Ex. 37.  The essential claim raised by petitioner was that his counsel was ineffective for failing to ensure that petitioner received medical care and a competency evaluation based on head injuries he had received in a fall in the bath tub and then when struck by a hit and run driver in Las Vegas. *Id.*

The state district court denied the petition, entering its written findings on March 21, 2008. Ex. 61.  Petitioner appealed this decision and on July 23, 2009, the Nevada Supreme Court reversed the denial, remanding the case back to state court for an evidentiary hearing.  Ex. 73.  Or remand, petitioner sought appointment of counsel, which the court initially denied.  Exs. 74 and 81. However, upon reconsideration, the motion was granted and counsel was appointed to assist petitioner.  Ex. 81.  An evidentiary hearing was finally conducted on January 14, 2010. Ex. 82. The petition was denied (ex. 85) and petitioner appealed (ex. 83).  The Nevada Supreme Court denied petitioner's motion to dismiss counsel and would not permit him to proceed in proper person.  Ex. 87.  Petitioner's subsequent attempts to file proper person documents with the court were rejected. Exs. 88 and 89.  Counsel for petitioner filed a fast-track statement on July 10, 2010. Ex. 92. After a response from the State, the lower court's decision was affirmed.  Ex. 96.  Remittitur issued on December 3, 2010.  Ex. 97.

3

1  The instant action was commenced when petitioner handed his federal habeas corpus petition
2  to prison officials on October 24, 2011. ECF No. 4, p. 1, item 5. After the Federal Public Defender
3  was appointed, an amended petition was filed. ECF No. 11.
4  **II.     Discussion**
5  Respondents have moved to dismiss the petition arguing that it was filed after the expiration
6  of the one-year limitations period imposed by 28 U.S.C. § 2244(d) and that the grounds for relief
7  remain unexhausted in state court.
8      A.     Statute of Limitations
9  The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of
10 limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). The one year time
11 limitation runs from the date on which a petitioner's judgment becomes final by conclusion of direct
12 review, or upon the expiration of the time for seeking direct review. 28 U.S.C. § 2244(d)(1)(A).
13 The Ninth Circuit Court of Appeals has held that the "time for seeking direct review" under 28
14 U.S.C. §2244(d)(1)(A) includes the ninety-day period within which a petitioner who was
15 unsuccessful on direct appeal can file a petition for a writ of certiorari from the United States
16 Supreme Court under Supreme Court Rule 13, whether or not the petitioner actually files such a
17 petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).
18 Furthermore, a properly filed petition for state post-conviction relief can toll the period of
19 limitations. 28 U.S.C. § 2244(d)(2). The triggering date for the recommencement of the AEDPA
20 limitations period after post-conviction review for Nevada prisoners is the Nevada Supreme Court's
21 issuance of the remittitur, rather than the date it is received in the district court, or filed in the
22 Nevada Supreme Court. *Duncan v. Walker*, 533 U.S. 167, 178, 121 S.Ct. 2120 (2001); *see Gonzales*
23 *v. State of Nevada*, 118 Nev. 590, 53 P.3d 901, 901-03 (2002); *see also Glauner v. State*, 107 Nev.
24 482, 813 P.2d 1001 (1991).
25
26

1    Because he did not file a timely direct appeal, petitioner's conviction became final on January
2    6, 2007, thirty days after the entry of the judgment of conviction. Nevada Rules of Appellate
3    Procedure (NRAP) 4(b). The one-year period commenced the following day and continued to run
4    until petitioner filed his state post-conviction petition on July 24, 2007. This period expended 198
5    days. The time during which the state post-conviction petition was pending in the Nevada courts
6    was tolled under the statute. See 28 U.S.C. § 2244(d)(2). When the Nevada Supreme Court issued
7    its remittitur on post-conviction review on December 3, 2010, the clock restarted. By the time
8    petitioner had filed his federal habeas petition on October 24, 2011, another 324 days were
9    expended. Thus, the federal petition was filed a total of 522 days after petitioner's conviction
10   became final. It must be dismissed absent some statutory or equitable mechanism which would toll
11   the statute of limitations during that time.

     B.    Equitable Tolling

*Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001) contains a clear statement of the basic law governing equitable tolling of the AEDPA statute of limitations:

> As we have previously held, "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *see also Calderon v. United States Dist. Court (Kelly)*, 128 F.3d 1283, 1288-89 (9th Cir. 1997), overruled on other grounds by *Calderon v. United States Dist. Court*, 163 F.3d 530 (9th Cir. 1998) (*en banc*) (petitioner entitled to equitable tolling where petitioner's counsel withdrew and left replacement counsel with unusable work product that made timely filing impossible); *Kelly*, 163 F.3d at 541-42 (petitioner entitled to equitable tolling because the district court ordered a stay preventing petitioner's counsel from filing a timely habeas petition and because petitioner was allegedly mentally incompetent).

*Tillema*, 253 F.3d at 504; *see also Holland v. Florida*, 130 S.Ct. 2549, 2562-63 (2010).

The Ninth Circuit Court of Appeals has made clear that equitable tolling is available in very limited cases. *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner may benefit from equitable tolling only "if extraordinary

5

circumstances beyond [his] control make it impossible to file a petition on time." *Miranda*, 292 F.3d at 1066 (quoting *Calderon v. United Stated Dist. Court (Beeler)*, 1289 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998)(*en banc*))(emphasis in original). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda*, 292 F.3d at 1066 (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.), *cert*. denied, 531 U.S. 878 (2000)).

Petitioner argues that he is entitled to equitable tolling of the statute of limitations because of interference by the state court through its misrepresentations or confusion as to whether or not petitioner had been appointed counsel to assist him in his post-conviction proceedings. He also argues that his post-conviction counsel's misconduct and head injuries which left him with a mental impairment made it impossible to file his petition in a timely manner.

    *i.*    Court Interference

Petitioner argues that he is entitled to equitable tolling for the period of time between March 14, 2007 and July 13, 2007, a period of 103 days. During that time the state court had ordered he be appointed counsel, but when the case was transferred to a new department, the new judge failed or refused to take action on the order and refused to address petitioner's motions seeking information about counsel.

A court's errors can contribute to the untimeliness of a petition, and when it does, the petitioner may be entitled to equitable tolling. *Corjasso v. Ayers,* 278 F.3d 874 (9th Cir. 2002) (district court's error and its consequences consumed majority of petitioner's year); *Jorss v. Gomez,* 266 F.3d 955, 958 (9th Cir. 2001) (court erroneously ruled that petition contained unexhausted claims and dismissed subsequent petition as untimely). The question for the Court is whether this circumstance was beyond petitioner's control and whether it actually prevented him from filing his petition in a timely manner.

1	Where the court has entered an order and sent notice of that order to the affected litigant, it is
2	not unreasonable for the litigant to expect the order to be carried out.  In petitioner's case, he
3	received notice that the state court had agreed to appoint him counsel.  *See* ex. 25.  That order was
4	entered on April 2, 2007, and petitioner received notice of it by April 14, 2007.  Ex. 110.  However,
5	after his case was transferred to another department, he made legitimate and diligent inquiries of the
6	court about who his counsel was and how that counsel might be contacted.  His inquiries were
7	ignored or deferred.  Exs. 29, 30, 32 and 110 at 1, 3.

8	Petitioner was not permitted to attend hearings set to discuss his requests for transcripts and
9	for counsel and his previously dismissed public defender tried, but was unable, to provide the court
10	with the information it was seeking. Ex. 31.  Moreover, the public defender and the court were not
11	familiar with the order the petitioner had received - at least not until a hearing in June when the court
12	received another motion from petitioner which referenced the order to appoint counsel.  Ex. 31.
13	However, the matter was continued by the court in order for petitioner to clarify his request.  *Id.*
14	Although petitioner immediately filed another motion which attempted to provide additional
15	information about his request and about the order upon which he was relying (ex. 32), it was not
16	until a July 10, 2007, hearing that the court located the order granting the motion for counsel and
17	rescinded it, determining that the previous judge had entered it in error.  Ex. 33 at 6.  The court
18	further delayed action on the matter waiting for the petitioner to demonstrate that his claims had
19	some merit before appointing counsel.  *Id.*  By July 24, 2007, petitioner had drafted and filed his
20	proposed state post-conviction petition along with a renewed motion for counsel.  Exs. 36 and 37.

21	These facts demonstrate extraordinary circumstances beyond the petitioner's control which
22	prevented him from filing his state post-conviction petition for a period of 103 days, from March 14,
23	2007, when he received notice of the order granting his motion for counsel, until July 13, 2007, the
24	date he presumably received notice from the court that the order was set aside. It was rational and
25	appropriate for the petitioner to attempt to contact his court-appointed counsel about the petition,
26

rather than begin drafting one on his own, and the court's delay in informing petitioner of the true circumstances caused a delay of 103 days. *Corjasso v. Ayers,* 278 F.3d 878. Petitioner has demonstrated the requisite diligence in pursuing this issue and in attempting to obtain information about the attorney who was, he believed, appointed to assist him with his petition. *Allen v. Lewis*, 255 F.3d 798, 800-801 (9th Cir.2001)("'If the person seeking equitable tolling has not exercised *reasonable diligence* in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken ....'") (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir.2000) (emphasis added)). Thus, the Court finds that petitioner is entitled to equitable tolling of the 103 days that expired while he awaited information about his court-appointed counsel. However, this amount of time is not sufficient to make the instant action timely where the petition was more than 157 days overdue. Petitioner must account for and obtain tolling of an additional 54 days in order to save this petition.

      *ii.*  *Attorney's Professional Misconduct*

  Petitioner also argues that he is entitled to equitable tolling for the period of time that his post-conviction counsel failed or refused to communicate with him, beginning after the evidentiary hearing was conducted at the state district court on January 14, 2010, and continuing through April of 2011, when petitioner was finally informed by the Clerk of the Nevada Supreme Court that his post-conviction appeal had been decided. Ex. 110, at 2.

  While a "garden variety claim of excusable neglect," *Irwin v.Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453 (1990), does not warrant equitable tolling, "serious instances of attorney misconduct" may be sufficiently extraordinary as to qualify for this equitable remedy. *Holland v. Florida,* 130 S.Ct. 2549, 2564 (2010). In *Holland*, the attorney failed to file the federal petition in a timely manner, failed to establish when the petition was actually due and failed to communicate to his client that the state supreme court had decided his case, all despite the petitioner's many letters

requesting information, providing information and reminding counsel of the urgency of the matter. *Id.* at 2564-65. This pattern continued over a period of years. *Id.*

In comparison to *Holland,* petitioner's counsel failed to communicate with petitioner for a period of more than a year. However, it was a matter of some four months during which the statute of limitations was actually ticking down that petitioner's inability to communicate with counsel cause him prejudice. This was during the time after the Nevada Supreme Court decided his appeal and before he was able to ascertain that a decision had been entered. Moreover, this failure to communicate on the part of counsel is not so extraordinary a circumstances as to warrant equitable tolling, particularly where the petitioner could, and ultimately did, contact the court on his own to obtain information about the status of his appeal.[2]

Petitioner argues that he was "forced to wait" for counsel to communicate with him because his continued attempts to file complaints about his counsel in the Nevada Supreme Court proceedings resulted in a warning that he was not entitled to file pro se documents with the court. However, there is a significant difference between attempting to file motions in the proceedings and attempting to obtain information regarding the status of the case through correspondence with the court clerk. Petitioner was not precluded from writing to request a status update from the court clerk and he finally did so in "April or May of 2011." Opposition, p. 9.

Petitioner further argues that his appointed counsel's abandonment left him to consult with the untrained law clerks at the prison, who misadvised him of the details of the limitations period rules. And, he continues, counsel's failure to provide him with his court file or a copy of any of the pleadings filed with the Nevada Supreme Court left him unable to pursue his federal remedies in time.

---

[2] Petitioner also argues that counsel's performance deficiencies included his failure to timely comply with the scheduling orders of the Nevada Supreme Court, and his failure to provide petitioner with the case file for the "remainder of the limitations period." Opposition, p. 8.

1       The United States Supreme Court in *Holland* determined that egregious acts on the part of
2 counsel, particularly in the face of the petitioner's numerous and continuous attempts to
3 communicate with and assist counsel, were sufficient to warrant equitable tolling. *Id.* at 2564.
4 However, the specific facts presented here do not appear sufficiently egregious and "garden variety"
5 negligence on the part of counsel has been held to be insufficient to warrant equitable tolling. *Irwin*,
6 498 U.S. at 96, 111 S.Ct. 453.

7       Petitioner specifically states his counsel did not provide him with a copy of the pleadings
8 filed with the Nevada Supreme Court . However, petitioner apparently did have copies of at least
9 some of his legal files as evidenced by his pro se post-conviction petition and its exhibits. *See* ex.
10 37. Moreover, he was able to draft numerous motions regarding the performance of his trial counsel
11 while attempting to litigate his post-conviction petition. *See e.g.,* exs. 37, 38, 46-48, 51, 67, 68.
12 Many of these documents include excepts from his file or copies of court documents which could
13 have been utilized in drafting and litigating his federal petition.

14       Neither has petitioner demonstrated sufficient diligence in attempting to overcome counsel's
15 negligence. *Miles v. Prunty*, 187 F.3d at 1107; *see also Calderon*, 128 F.3d at 1288-89. His affidavit
16 indicates that between March of 2010 and April of May of 2011, petitioner did virtually nothing but
17 wait for information from his attorney. Ex. 110, p. 3. He states that at some point he went to the law
18 library and asked about "time," and left with the understanding that he had one year "to complete his
19 federal habeas process" starting on the date he completed his post-conviction proceedings. *Id.* He
20 does not assert that he attempted to confirm this information from any other source or that he
21 actually raised this question in any correspondence to his counsel.

22       Petitioner is not entitled to equitable tolling of the limitations period on the basis of his
23 attorney's negligent conduct.

24 / / /
25 / / /
26

10

      *iii.*  *Mental Impairment*

  Finally, petitioner argues that he is entitled to equitable tolling of the limitations period because he suffered memory loss and headaches resulting from a fall in the bathtub and a hit and run accident that occurred just prior to the time of the crimes in 2006. If a petitioner can show a mental impairment so severe that he was unable to personally understand the need to timely file a habeas petition or even the need to prepare the petition for filing, and that, despite his diligence, his mental impairment made it impossible under the totality of the circumstances to meet the filing deadline, he may be entitled to equitable tolling. *Bills v. Clark*, 628 F.3d 1092, 1093 (9th Cir. 2010).

  *Bills* requires the court to

> 1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing;
>
> 2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired;
>
> 3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and
>
> 4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

*Bills*, 628 F.3d at 1100-01.

  Throughout his various state court pleadings petitioner has made reference to his headaches and loss of memory which occurred as a result of head trauma suffered in two accidents in February 2006. In fact his claims of ineffective assistance of counsel rely heavily on counsel's failure to object to the criminal matter proceeding to the guilty plea when petitioner was suffering from memory loss and was otherwise "incompetent" to assist with his defense.

  Petitioner presents certain documents in support of his opposition to the motion to dismiss. *See* exs. 103-110. One of these documents, petitioner's medical records for the period of his incarceration in 2007 through November of 2011, indicate that he complained of memory loss at

prison intake in January 2007, again in October of 2007, and in one episode of note in August of 2009. Ex. 109, ECF pp. 17 and 19.[3] These allegations, along with the documentary evidence of petitioner's medical care at about the time of his state post-conviction proceedings, meet the first factor of this analysis for the period of time between 2007 and 2009. However, the record does not support the ongoing or serious nature of the impairment, as alleged by petitioner, where there is no medical record of such problems beyond that date.

At times when the clock was already tolled by the pendency of state proceedings, petitioner reported to prison medical staff that he had head trauma from an accident in 2006 and suffered loss of memory. However, the delay in filing his federal petition, particularly between December of 2010 and October of 2011, cannot be attributed to this mental impairment at a much earlier time. Thus, petitioner has not demonstrated that he was suffering from a severe mental impairment during the "filing period" as required under *Bills*.

## IV. Conclusion

Petitioner has not shown that he suffered such a severe mental impairment that it made it impossible for him to file his federal habeas petition in a timely manner. Neither does his post-conviction counsel's negligence in communication or in failing to release petitioner's case file warrant equitable tolling where petitioner was able to bring many motions and his initial pro se petition to the court without his case file. Even when given credit for the 103-day delay resulting from the state court's confusion about his status with appointed counsel, the instant petition is untimely.

Petitioner has not demonstrated the requisite diligence in pursuing his federal habeas rights during the period of time after his conviction or after he was made aware that his post-conviction

---

[3] It appears from the totality of the medical records that petitioner's chief health complaint or problem is related to his blood pressure and possible cardiac issues rather than head trauma or mental issues. In fact, the August 2009 episode seems more closely related to chest pain and a possible heart attack for which he received treatment in early September, 2009. Ex. 109 at p. 92.

1  proceedings had concluded until the clock ran out.  The petition is untimely and petitioner is not
2  entitled to equitable or statutory tolling for sufficient time to change that fact.  The petition will be
3  dismissed.
4       In order to proceed with an appeal from this court, petitioner must receive a certificate of
5  appealability. 28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of
6  the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme Court
7  has held that a petitioner "must demonstrate that reasonable jurists would find the district court's
8  assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484
9  (2000).
10      he Supreme Court further illuminated the standard for issuance of a certificate of
11 appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

17 *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).
18      The Court has considered the issues raised by petitioner, with respect to whether they satisfy
19 the standard for issuance of a certificate of appeal, and the Court determines that none meet that
20 standard.  Accordingly, the Court will deny petitioner a certificate of appealability.
21      **IT IS THEREFORE ORDERED** that the motion to dismiss (ECF No. 22) is **GRANTED**.
22 The petition is **DISMISSED WITH PREJUDICE** as untimely.
23 / / /
24 / / /
25 / / /
26

No certificate of appealability is warranted and none shall issue.  The Clerk shall enter judgment accordingly.

Dated, this 25th day of March, 2013.

_____
UNITED STATES DISTRICT JUDGE